# EXHIBIT  1

## to

# DECLARATION

## of

# SPECIAL AGENT
# RICHARD H. HAINES

# UNITED STATES OF AMERICA

### DEPARTMENT OF HEALTH AND HUMAN SERVICES
#### OFFICE OF INSPECTOR GENERAL

## SUBPOENA DUCES TECUM

Control No.: 17498

*To:* Fresenius Medical Care Rx, LLC
920 Winter Street
Waltham, MA 02451

*YOU ARE HEREBY COMMANDED TO APPEAR BEFORE Special Agent Richard Haines, an official of the Office of Inspector General, at 404 James Robertson Pkwy, Suite 1504, in the City of Nashville, and State of Tennessee **on the 26th of May, 2017, at 9:00 o'clock, A.M. of that day, in connection with** an investigation into possible false or otherwise improper claims submitted for payment under Title XVIII (Medicare) and Title XIX (Medicaid) of the Social Security Act; and you are hereby required to bring with you and produce at said time and place the following:*

### See Attachment

*which are necessary in the performance of the responsibility of the Inspector General under Public Law 95-452 (5 U.S.C. App. 3 § 6(a)(4)), as amended by Public Law 100-504, to conduct and supervise audits and investigations and to promote economy, efficiency and effectiveness in the administration of and to prevent and detect fraud and abuse in the programs and operations of the Department of Health and Human Services.*

*IN TESTIMONY WHEREOF*

*Derrick Jackson, the undersigned official of the Office of Inspector General of said DEPARTMENT OF HEALTH AND HUMAN SERVICES, has hereunto set his hand this 2nd day of May, 2017.*



_____
*Special Agent in Charge*

## ATTACHMENT A
## DEFINITIONS AND INSTRUCTIONS

### I. DEFINITIONS

1.    "Fresenius RX" means Fresenius Medical Care RX, LLC, with its principal place of business in Tennessee, any corporate predecessors and successors, affiliates, subsidiaries, parent companies, entities, owners, officers, directors, employees, agents, representatives, affiliates, divisions, subsidiaries and associated real estate investment trusts.

2.    "Fresenius Pharmacy" means Fresenius Medical Care Pharmacy Services, Inc., with its principal place of business in Florida, any corporate predecessors and successors, affiliates, subsidiaries, parent companies, entities, owners, officers, directors, employees, agents, representatives, affiliates, divisions, subsidiaries and associated real estate investment trusts.

3.    "Fresenius Holdings" means Fresenius Medical Care Holdings, Inc., the parent company of Fresenius RX and Fresenius Pharmacy, with its principal place of business in Massachusetts, any corporate predecessors and successors, affiliates, subsidiaries, parent companies, entities, owners, officers, directors, employees, agents, representatives, affiliates, divisions, subsidiaries and associated real estate investment trusts.

4.    "Fresenius" collectively means Fresenius RX, Fresenius Pharmacy, and Fresenius Holdings.

5.    "You" and "your" refer to Fresenius.

6.    *And*, *or*, and *and/or* shall be construed either disjunctively or conjunctively so as to bring within the scope of this demand for documentary material any material which might otherwise be construed as outside the scope of this Subpoena.

7.    *Archived data* or *archival data* means information maintained in long-term storage and for record-keeping purposes, but is not immediately accessible to the user of a computer system.

8.    *Backup data* means the exact copy of ESI that is stored as a source for recovery in the event of a system problem or failure.

9.    *Communication* means any transmission or exchange of information between two or more persons orally or in writing, whether by chance or design, and includes, without

limitation, any conversation or discussion, whether by face-to-face encounter, by regular mail or courier, by telephone, email, or by other means of electronic communication, whether transmitted in interstate or intrastate commerce.

10.    *Computer* includes, but is not limited to, network servers, desktops, laptops, notebooks, sub-notebooks, netbooks, tablets, personal digital assistants (PDA's), smartphones (*e.g.*, iPhones), handheld computing devices (*e.g.*, iPads), and any peripheral device capable of storing data and from which data can be retrieved.

11.    *Document, documents,* and *documentary material* mean any and all writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations whether preserved in hard-paper form or stored in digital form in any medium from which information can be obtained either directly or, if necessary, after translation by you into a reasonably usable form, and includes, but is not limited to, any and all originals, copies and reproductions, archived data, and backup data of all records, papers, tables, charts, appointment calendars, schedules, journals, notes, memoranda, reports, minutes, notices, bulletins, financial statements, balance sheets, ledgers, contracts, agreements, promissory notes, security agreements or other negotiable instruments, telegrams, facsimiles, telexes, wire transfers, films, microfilms, photographs, video files, slides, audio recordings, transcriptions, phone records, *communications* (including, but not limited to *electronic communications*), voice mail, computer files, or any other information or data compilations stored in databases or accessible through computer or other information retrieval systems, *e.g.*, Portable Digital Assistants (PDA's), together with instructions and all other materials necessary to use or interpret such data compilations, and other like or similar tangible things, regardless of the means of their preparation and use.

12.    "*Identify*" or "*identity*" with respect to a person means provide the name, title, job description, last known address and telephone number, dates of tenure, licensure or certification; and reason for termination or separation.

13.    *Electronic communication* includes, but is not limited to:

    a.    *Email* (a/k/a *electronic mail* or *e-mail*): an electronic means for communicating information under specified conditions, generally in the form of text messages, through systems that will send, store, process and receive information and in which messages are held in storage until the addressee accesses them.

    b.    *Metadata* means data stored electronically that describes characteristics of ESI, found in different places and in different forms, as supplied by applications, users or file systems, and describing how, when, and by whom ESI was collected, created, accessed, modified, and how it is formatted. The required *metadata* to be produced in response to this Demand is set forth below in the Specifications for Production of Electronically Stored

Information and Digitized Images.

        c.     *Header information*: distribution information associated with email such as *Sender*, *Recipient*, *Subject*, *Date* and *Time*, *cc*: (*carbon copy*), *bcc*: (*blind carbon copy*).

        d.     *Parent email*, *parent items*, and *child files*: parent email refers to the content and substance of an electronic communication, including header information; parent items refers to the content and substance of items such as calendars, tasks, notes, etc.; child files refers to files attached to parent files or parent items.

        e.     *Social Media* means electronic communication by and between correspondents connected together using media such as blogs (e.g., Twitter), content communities (e.g., YouTube), or social networks (e.g., Facebook).

        14.     *Electronic data storage devices* mean, but are not limited to, internal hard disk drives; external or peripheral hard disk drives; tape drives, magnetic media "floppy disks," magnetic tapes, cassettes, cartridges, streaming tape; computer disks or diskettes; any peripheral devices such as monitors, computer printers, modems, terminals (keyboards and display screens) and other computer related operating equipment, and like devices equipped with memory storage capabilities; data disks, compact flash cards, secured digital cards, multimedia cards, "smart" cards, removable flash memory drives, "thumb" sticks, USB storage devices and any other computer or device equipped with a memory function capable of storing data and information in digital form.

        15.     "Employee" means any person, manager, officer, or director, including independent contractor, consultant, or agent who has acted on behalf of Fresenius, or who has performed any service for Fresenius or under its name (whether on a full-time, part-time, commission, or other basis, and whether paid or unpaid).

        16.     Patient record(s) includes all documentary material – in hard copy or electronic form.

        17.     *Relating to* or *relate(s)* means consisting of, referring to, reflecting, supporting, evidencing, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected to the matter discussed.

        18.     The singular and plural forms of any word shall be construed interchangeably so as to bring within the scope of this subpoena any *documentary material* which might otherwise be construed as outside its scope.

## II. **GENERAL INSTRUCTIONS**

1.    This Subpoena applies to all *documentary material* and information in your possession, custody, or control regardless of their location and regardless of whether such material are held by your current or former employees, including, but not limited to, facility-level personnel, mid-level management personnel, upper-level management personnel, in-house IT specialists and technicians, IT specialists and technicians to whom digital services have been out-sourced, consultants, representatives, agents, and any and all other persons acting on your behalf. Vanguard is also required to produce responsive documents in the possession of its sales, marketing, and other field employees, including such documents maintained by such employees at their homes, personal offices, or other locations out of which they work, and such documents maintained by such employees on their personal computers (including, but not limited to, electronic mail messages maintained on their personal computers).

2.    Unless otherwise specified, this Subpoena applies to all *documentary material* in your possession, custody, or control from the period **from January 1, 2011, to the present**.

3.    This Subpoena is continuing in nature. If you become aware of or acquire possession, custody, or control of additional *documentary material* responsive to this Subpoena, you shall promptly produce such additional *documentary material*.

4.    Productions that include claims of privilege or confidentiality (resulting in documents, or portions of documents, being withheld), shall be accompanied by a Privilege Log that identifies the document(s) by Bates range and the basis for each claim of privilege. The Privilege Log shall be electronically produced in Excel or Word format and for any document withheld on the ground of any claimed privilege shall include:

    (a)    The name and title of the author (and if different, the preparer and signatory);

    (b)    The name(s) and title(s) of the individual(s) to whom the document was addressed;

    (c)    The name(s) and title(s) of the individuals to whom the document or a copy of the document was sent or to whom the document or a copy, or any part thereof, was shown;

    (d)    The date of the document;

    (e)    A brief description of the subject matter;

    (f)    A statement of the specific basis on which the privilege is claimed; and

    (g)    The Request(s) to which it is responsive.

When a requested document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible. If a privilege is asserted with

regard to a part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a document is redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

5.      Identify all responsive *documentary material* that has been lost, discarded, destroyed, altered, or spoiled. In so doing, state: (a) the type of documentary material; (b) the date of its creation; (c) the approximate date it was lost, discarded, destroyed, altered, or spoiled; (d) the circumstances of the document's loss, misplacement or destruction; and (e) the identity of each person having knowledge about the documentary material and about its spoliation.

6.      To the extent that *documents* responsive to this Subpoena are in the possession, custody, or control of third parties, this Subpoena requires a statement to that effect at the time of production, specifically providing the name, address, telephone number and principal contact of the third party, and shall further identify those documents in said third party's possession.

7.      All *documentary material* provided in response to the Subpoena is to include all marginalia and post-its, as well as any attachments referred to or incorporated by the document. To the extent that documents are found attached to other documents, by means of paper clips, staples or other means of attachment, such documents shall be produced together in the condition in which they are found. All documents should be produced in the manner and format in which they are kept in the usual course of business. If the requested documents are maintained in a file, the file folder is included in the request for the production of those documents. If documents are stored by you electronically, they should be produced in electronic format. If documents are stored in multiple formats, they should be produced in each format in which they are stored by you.

8.      Fresenius RX, Fresenius Pharmacy, and Fresenius Holdings shall designate an officer or employee as the person responsible to produce documents to the United States Department of Health and Human Services, Office of Inspector General, care of Special Agent Patrick Petty on the Subpoena return date (the "Custodian"). The Custodian shall have direct knowledge of, and responsibility for, the search conducted by each Fresenius entity for documents responsive to this Subpoena and the selection of the documents to be produced.

9.      By separation into separate file folders or other enclosures, Fresenius RX, Fresenius Pharmacy, and Fresenius Holdings are to identify the paragraph and subparagraph of Section III "Documents to Be Produced" to which each document produced pursuant to this Subpoena is responsive. (If a document is responsive to more than one paragraph, it is to be placed in the file folder of the first paragraph to which it is responsive, the file folder should refer to the existence and location of the responsive document in the earlier file.) The Custodians

shall sign and mark each folder or other enclosure with the name of Fresenius RX, Fresenius Pharmacy, and/or Fresenius Holdings, the date of the Subpoena, and the paragraph of the Subpoena to which the documents are responsive.

10.     Produce your responses according to the Attachment B - Specifications for Production of ESI and Digitized Images.

### III. DOCUMENTS TO BE PRODUCED

1. Management and organizational charts and other documents sufficient to describe in detail Fresenius RX's, Fresenius Pharmacy's, and Fresenius Holdings':

    a. Management structure;

    b. Current and former management personnel;

    c. Corporate structure, including relationships between and among parent(s), subsidiary(-ies), divisions, joint ventures, or other related entities associated with Fresenius, or in which Fresenius has a management role or an ownership or control interest as defined in 42 U.S.C. § 1320a-3(a)(3); and

    d. The legal status and tax filing status of Fresenius RX, Fresenius Pharmacy, and Fresenius Holdings.

2. Documents sufficient to identify all members of the Board of Directors of Fresenius RX, Fresenius Pharmacy, and Fresenius Holdings.

3. Documents sufficient to identify all of Fresenius RX's and Fresenius Pharmacy's Policies and Procedures related to marketing, performance appraisal, bonuses, and budgeting. A list containing all such information may be provided instead of the documents, and the exact documents could then be produced upon request.

4. All of Fresenius RX's and Fresenius Pharmacy's policies and procedures, with dates of their application and/or effectiveness, for the following:
    a. Beneficiary copayments, including collections, copayment adjustments, copayment write-offs, small balance write-offs, and/or copayment waivers
    b. Use of manufacturer copayment cards on patients with government insurance
    c. Automatic prescription refills and/or automatic shipping of prescription refills
    d. Calling and/or speaking to customers before refilling or shipping their prescription refills
    e. Copayment call guidelines and/or
    f. Handling of medication returns by customers and/or customer refusals of delivered medications

5. All variations of Fresenius RX's and Fresenius Pharmacy's refill assistance form[1].

6. Any and all Fresenius call sheets or scripts that were utilized and/or in effect during the covered period, with an identification of the dates when each version were utilized.

7. All documents that refer or relate to your Special Bad Debt project or policy.

8. All of your call sheets.

9. All of your advertising, marketing brochures, written materials, commercials, radio ads, websites disseminated to the general public, prospective clients, physicians, and hospitals, relating to Fresenius RX and/or Fresenius Pharmacy.

10. Your welcome kits to new customers.

11. All notes and minutes of meetings of Fresenius' Board of Directors and any and all subcommittees that discuss, refer or relate to any of the following:

    a. Government payer billing;

    b. Revenue enhancement;

    c. Advertising or marketing of Fresenius RX and/or Fresenius Pharmacy; and/or

    d. Bonuses available or awarded to staff at Fresenius RX and/or Fresenius Pharmacy;

12. All documents relating to budgets for Fresenius RX and/or Fresenius Pharmacy, including but not limited to requests for and input on budgets; draft budgets; actual budgets; requests to modify budgets and actual modifications thereto; budgeted financial statements; budget variance reports; staffing to budget data, and/or actual cost to budget comparison reports with narrative descriptions describing or explaining variances.

13. All plans, proposals and analyses that identify, discuss, refer or relate to increasing revenue for Fresenius RX and/or Fresenius Pharmacy.

14. All documents and communications that discuss, refer or relate to any goal(s), quota(s), incentive(s) or bonus(es) provided to any Fresenius employee or supervisor who provides services related to any patients of Fresenius RX and/or Fresenius Pharmacy, including but not limited to goals, quotas, or incentives for selling prescription medications.

15. All documents and communications that constitute, discuss, refer or relate to any compliance or training materials applicable to Fresenius RX and/or Fresenius

---

[1] Only the blank version (without filled out patient information) of applicable forms is requested, not every completed form for every patient.

Pharmacy, including but not limited to manuals, handbooks, brochures or video or internet media.

16. All documents and communications that constitute, discuss, refer, or relate to disclosures regarding Fresenius RX and/or Fresenius Pharmacy made by Fresenius to any government agency or regulatory body.

17. All comments, call logs, and/or notes in your New Leaf system, including but not limited to the New Leaf system located under both the patient account and under the patient's Accounts Receivable (A/R) account, that refer or relate to customer complaints about copayments, refilled medications that the patient did not order, receipt of excessive or stockpiled medication, and/or patient returns of, or refusals to accept, medication to Fresenius.

18. All documents in Fresenius RX's and Fresenius Pharmacy's possession or control that constitute, discuss, refer, or relate to formal or informal complaints and complaints filed in any court, regarding potential violations of policies/procedures, instructions, directives, and/or State and Federal guidelines/regulations for any of the following:

    a. Waiving copayments for beneficiaries with government health insurance;

    b. Automatically refilling customer prescriptions without first obtaining the patient's consent to delivery from January 1, 2014 through the present

    c. Patient returns of, or refusal to accept, delivered medications.

19. Documents sufficient to identify all copayment adjustments and/or write-offs for patients with government health insurance, including the patient name, date of service, date of the write-off, and what if any information Fresenius possessed about the patients' ability to pay the copayment.

20. All of Fresenius RX's and Fresenius Pharmacy's patient records for the persons listed in Attachments 1 to this Subpoena.

21. All electronic communications, including but not limited to emails, that refer or relate to the following:

    a. writing off, waiving, and/or forgiving beneficiaries' cost, and/or copayments for, prescription medications;

    b. beneficiaries' inability to pay copayments;

    c. collection efforts for beneficiaries' copayments;

22. All of your internal audits and/or internal monitoring reports about claims processing and compliance.

23. Detailed claims data for the five medications for which you have the highest paid claims, including Renvela, Sensipar, Fosrenol, and Calcium Acetate.

**Attachment B**

**Instructions for Production of ESI and Digitized ("Scanned") Images** (ESI Instructions)

**Collection of Electronically Stored Information** (ESI)
Careful consideration should be given to the methodology, implementation and documentation of ESI collection to ensure that all responsive data and metadata are preserved in the collection process.

1.  **Instruction Modifications**
    Any modifications or deviations from the ESI Instructions may be done only with the express permission of the government and these modifications or deviations should be communicated to the government and approved by the government in written form. Any responsive data or documents that exist in locations or native forms not discussed in these ESI Instructions remain responsive and, therefore, arrangements should be made with the government to facilitate their production.

2.  **Production Format of ESI and Imaged Hard Copy**
    Responsive ESI and imaged hard copy shall be produced in the format outlined below. All ESI, except as
    outlined below in sections 9 – 20, shall be rendered to TIFF image format, and accompanied by a Concordance® Image Cross Reference file. All applicable metadata (see section 3 below) shall be extracted and
    provided in Concordance® load file format.

    a.  **Image File Format:** All images, paper documents scanned to images, or rendered ESI, shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression). Images should be uniquely and sequentially Bates numbered and unless otherwise specified, Bates numbers should be an endorsement on each image.
    - All TIFF file names shall include the unique Bates number burned into the image.
    - Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page.
    - All TIFF image files shall be stored with the ".tif" extension.
    - Images shall be OCR'd using standard COTS products.
        - An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.
    - All pages of a document or all pages of a collection of documents that comprise a folder or other logical grouping, including a box, shall be delivered on a single piece of media.
    - No image folder shall contain more than 2000 images.

    b.  **Concordance® Image Cross Reference file:** Images should be accompanied by a Concordance® Image Cross Reference file that associates each Bates number with its corresponding single-page TIFF image file. The Cross Reference file should also contain the image file path for each Bates numbered page.
    - Image Cross Reference Sample Format:

        ABC00000001,OLS,D:\DatabaseName\Images\001\ ABC00000001.TIF,Y,,,
        ABC00000002,OLS,D:\DatabaseName\Images\001\ ABC00000002.TIF,,,,
        ABC00000003,OLS,D:\DatabaseName\Images\001\ ABC00000003.TIF,,,,
        ABC00000004,OLS,D:\DatabaseName\Images\001\ ABC00000004.TIF,Y,,,

c. **Concordance® Load File**: Images should also be accompanied by a "text load file" containing delimited text that will populate fields in a searchable, flat database environment. The file should contain the required fields listed below in section 3.

- Text delimited load files are defined using the standard Concordance delimiters. For example:

  *Field Separator*                    ¶ *or Code 020*
  *Text Qualifier*                     þ *or Code 254*

- The text file should also contain hyperlinks to applicable native files, such as Microsoft Excel or PowerPoint files.
- There should be one line for every record in a collection.
- The load file must contain a field map/key listing the metadata/database fields in the order they appear within the data file. For example, if the data file consists of a First Page of a Record (starting Bates), Last Page of a Record (ending Bates), DOCID, DOCDate, File Name, and a Title, then the structure may appear as follows:

  þBEGDOCþ¶þENDDOCþ¶þDOCIDþ¶þDOCDATEþ¶þFILENAMEþ¶þTITLEþ

d. **The extracted/OCR** text for each document should be provided as a separate single text file. The file name should match the BEGDOC# or DOCID for that specific record and be accompanied by the .txt extension.

e. **Directory and folder structure:** The directory structure for productions should be:
   *\CaseName\***LoadFiles**
   *\CaseName\***Images** < For supporting images (can include subfolders as needed)
   *\CaseName\***Natives** <Native Files location (can include subfolders as needed)
   *\CaseName\***Text** <Extracted Text files location (can include subfolders as needed)

3. **Required Metadata/Database Fields**

   - A "✓" denotes that the indicated field should be present in the load file produced.
   - "Other ESI" includes data discussed in sections 5 – 20 below, but does not include email, email repositories (section 11), "stand alone" items (section 12), and imaged hard copy material (section 9). Email, email repositories, and "stand alone" materials (section 12) should comply with "Email" column below. Imaged hard copy materials should comply with the "Hard Copy" column.

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| COLLECTION SOURCE | Name of the Company/Organization data was collected from | Text | 160 | ✓ | ✓ | ✓ |
| SOURCE ID (BOX #) | Submission/volume/box number | Text | 10 | ✓ | ✓ | ✓ |
| CUSTODIAN | Custodian/Source - format: Last, First or ABC Dept. | Text | 160 | ✓ | ✓ | ✓ |
| AUTHOR | Creator of the document | Text | 500 | | | ✓ |

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| BEGDOC# | Start Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| ENDDOC# | End Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| DOCID | Unique document Bates # or populate with the same value as Start Bates (DOCID = BEGDOC#) | Text | 60 | ✓ | ✓ | ✓ |
| PGCOUNT | Page Count | Number | 10 | ✓ | ✓ | ✓ |
| GROUPID | Contains the Group Identifier for the family, in order to group files with their attachments | Text | 60 | | ✓ | ✓ |
| PARENTID | Contains the Document Identifier of an attachment's parent | Text | 60 | | ✓ | ✓ |
| ATTACHIDS | Child document list; Child DOCID or Child Start Bates | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| ATTACHLIST | List of Attachment filenames | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BEGATTACH | Start Bates number of first attachment | Text | 60 | ✓ | ✓ | ✓ |
| ENDATTACH | End Bates number of last attachment | Text | 60 | ✓ | ✓ | ✓ |
| PROPERTIES | Privilege notations, Redacted, Document Withheld Based On Privilege | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| RECORD TYPE | Use the following choices: Image, Loose E-mail, E-mail, E-Doc, Attachment, Hard Copy or Other. If using Other, please specify what type after Other | Text | 60 | ✓ | ✓ | ✓ |
| FROM | Author - format: Last name, First name. | Text | 160 | | ✓ | ✓ |
| TO | Recipient - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| CC | Carbon Copy Recipients - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BCC | Blind Carbon Copy Recipients - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| SUBJECT | Subject line/Document Title | Text | Unlimited | | ✓ | ✓ |
| CONVINDEX | E-mail system ID used to track replies, forwards, etc. | Text | Unlimited | | ✓ | |

Subpoena to Fresenius Medical Care RX: 21 C et al. Page 53

Case 3:20-cv-00158     Document 4-1     Filed 02/24/20     Page 14 of 21 PageID #: 3658

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| DOCDATE | Last Modified Date for files and Sent date for e-mail, this field inherits the date for attachments from their parent. | Date | MM/DD/YYYY | | ✓ | ✓ |
| TEXT FILEPATH | Relative file path of the text file associated with either the extracted text or the OCR | Text | Unlimited | ✓ | ✓ | ✓ |
| DATE TIME SENT | Date Sent (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME CRTD | Date Created (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME SVD | Date Saved (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME MOD | Date Last Modified (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME RCVD | Date Received (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | |
| DATE TIME ACCD | Date Accessed (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| FILE SIZE | Native File Size in bytes | Number | 10 | | | ✓ |
| FILE NAME | File name - name of file as it appeared in its original location | Text | Unlimited | | | ✓ |
| APPLICATION | Application used to create native file (e.g. Excel, Outlook, Word) | Text | 160 | | ✓ | ✓ |
| FILE EXTENSION | Extension for the file (e.g. .doc, .pdf, .wpd) | Text | 10 | | ✓ | ✓ |
| FILEPATH | Data's original source full folder path | Text | Unlimited | | ✓ | ✓ |
| NATIVE LINK | Relative file path location to the native file | Text | Unlimited | | ✓ | ✓ |
| FOLDER ID | Complete E-mail folder path (e.g. Inbox\Active) or Hard Copy container information (e.g. folder or binder name) | Text | Unlimited | ✓ | ✓ | ✓ |
| PARAGRAPH REQUEST NUMBER | Subpoena/request paragraph number to which the document is responsive. Use semicolon to delimit multiple entries. | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| MD5 HASH | MD5 Hash value (used for deduplication or other processing) (e-mail hash values must be run with the e-mail and all of its attachments) | Text | Unlimited | | ✓ | ✓ |
| MESSAGEHEADER | E-mail header.  Can contain IP | Text | Unlimited | | ✓ | |

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| | address | | | | | |
| ATTACHMCOUNT | Number of attachments (any level child document) associated with a ParentID | Text | 10 | | ✓ | |
| FILE TYPE | Identifies the application that created the file Type of file, not to be confused with file extension | Text | 160 | | ✓ | ✓ |
| COMMENTS | Identifies whether the document has comments associated with it | Text | 10 | | ✓ | ✓ |
| MESSAGE TYPE | Exchange Message class or equivalent | Text | 60 | | ✓ | |
| EXTENDED PROPERTIES | For PDFs Only | Text | 600 | | ✓ | ✓ |

4. **Search, De-Duplication, Near-Duplicate Identification, E-mail Conversation Threading and Other Culling Procedures**

De-duplication of exact copies within a custodian's data may be done, but all file paths and custodians must be
provided for each duplicate document in an exception report in .csv format. The recipient shall not use any other procedure to cull, filter, group, separate or de-duplicate, or near-deduplicate, etc. (i.e., reduce the volume of) responsive material before discussing with and obtaining the written approval of the government. All objective coding (e.g., near duplicate ID or e-mail thread ID) shall be discussed and produced to the government as additional metadata fields. The recipient will not employ analytic software or technology to search identify, or review potentially responsive material, including but not limited to technology assisted review (TAR) or predictive coding, without first discussing with the government.

5. **Hidden Text**

All hidden text (e.g. track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file. For files that cannot be expanded the native files shall be produced with the image file.

6. **Embedded Files**

All non-graphic embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and produced. For purposes of production the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved.

7. **Image-Only Files**

All image-only files (non-searchable .pdfs, multi-page .tiffs, Snipping Tool and other screenshots, etc., as well as all
other images that contain text) shall be produced with associated OCR text and metadata/database fields identified
in section 3 for "Other ESI."

8. **Encrypted Files**

Any data (whether individual files or digital containers) that is protected by a password, encryption key, digital

rights management, or other encryption scheme, shall be decrypted prior to processing for production. The
unencrypted text shall be extracted and provided per section 2.c.

a.      The unencrypted files shall be used to render images and provided per sections 2.a and 2.b. The unencrypted native file shall be produced pursuant to sections 10-20.

b.      If such protected data is encountered but unable to be processed, each file or container shall be reported as an exception in the accompanying Exception Report (pursuant to section 26) and shall include all available metadata associated with the data, including custodian information.

**9.     Production of Imaged Hard Copy Records**

a. All hard copy material shall reflect accurate document unitization including all attachments and container information (to be reflected in the PARENTID, ATTACHID, BEGATTACH, ENDATTACH and FOLDERID). Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle. (e.g., staples, paperclips, rubber bands, folders, or tabs in a binder). The first document in the collection represents the parent document and all other documents will represent the children.

b. All documents shall be produced in black and white TIFF format unless the image requires color. An image requires color when color in the document adds emphasis to information in the document or is itself information that would not be readily apparent on the face of a black and white image.  Images identified as requiring color shall be produced as color 300 dpi single-page JPEG files.

c. All objective coding (e.g., document date or document author) should be discussed and produced to the government as additional metadata/database fields.

**10.    Production of Spreadsheets and Presentation Files.**

All spreadsheet and presentation files (e.g. Excel, PowerPoint) shall be produced in the unprocessed "as kept in the
ordinary course of business" state (i.e., in native format), with an associated placeholder image. *See* section 18
below. The file produced should maintain the integrity of all source, custodian, application, embedded and related
file system metadata. No alteration shall be made to file names or extensions for responsive native electronic files.

**11.    Production of E-mail Repositories**

E-mail repositories, also known as e-mail databases (e.g., Outlook PST, Lotus NSF, etc.), can contain a variety of
items, including: messages, calendars, contacts, tasks, etc. For purposes of production, responsive items shall
include the "E-mail" metadata/database fields outlined in section 3, including but not limited to all parent items
(mail, calendar, contacts, tasks, notes, etc.) and child files (attachments of files to e-mail or other items) with the
parent/child relationship preserved. Our preferred format for e-mail productions is PST.  E-mail should NOT be provided in X400 or X500 format.  E-mail databases from systems other than Microsoft Exchange shall be
produced after consultation with and written consent of the government about the format for the production of such
databases.

12. **Production of Items Originally Generated in E-mail Repositories but Found and Collected Outside of E-mail Repositories, i.e., "Stand-alone" Items**

Any parent e-mail or other parent items (e.g., calendar, contacts, tasks, notes, etc.) found and collected outside of e-mail repositories (e.g., items having extensions .msg, .htm, .mht, etc.), shall be produced with the "Loose E-mail" metadata fields outlined in section 3, including but not limited to any attachments, maintaining the family (parent/child) relationship.

13. **Production of Instant Messenger (IM), Voicemail Data, Audio Data, Video Data, etc.**

The responding party shall identify, collect, and produce any and all data which is responsive to the requests which

may be stored in audio or video recordings, cell phone/PDA/Blackberry/smart phone data, tablet data, voicemail

messaging data, instant messaging, text messaging, conference call data, video/audio conferencing (e.g., GoTo

Meeting, WebEx), and related/similar technologies. However, such data, logs, metadata or other files related

thereto, as well as other less common but similar data types, shall be produced after consultation with and written

consent of the government about the format for the production of such data.

14. **Production of Social Media**

Prior to any production of responsive data from social media (e.g., Twitter, Facebook, Google+, LinkedIn, etc.)

the producing party shall first discuss with the government the potential export formats before collecting the

information.

15. **Productions of Structured Data**

Prior to any production of responsive data from a structured database (e.g., Oracle, SAP, SQL, MySQL, QuickBooks, etc.), the producing party shall first identify the database type and version number, provide the database dictionary and any user manuals, or any other documentation describing the structure and/or content of

the database and a list of all reports that can be generated from the database. The list of reports shall be provided in native Excel (.xls or .xlsx) format.

16. **Production of Structured Data from Proprietary Applications**

Prior to any production of structured data from proprietary applications (e.g., proprietary timekeeping, accounting, sales rep call notes, CRMs, SharePoint etc.) the producing party shall first provide the database dictionary and a list of all reports that can be generated from the structured database. The list of reports shall be produced in native Excel (.xls or .xlsx) format.

17. **Production of Photographs with Native File or Digitized ESI**

Photographs shall be produced as single-page JPEG files with a resolution equivalent to the original image as they were captured/created. All JPEG files shall have extracted metadata/database fields provided in a Concordance® load file format as outlined in section 3 for "Other ESI."

18. **Production of Images from which Text Cannot be OCR Converted**

An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.

19. **Production of ESI from Non-PC or Non-Windows-based Systems**
If responsive ESI is in non-PC or non-Windows-based Systems (e.g., Apple, IBM mainframes, and UNIX machines, Android device, etc.), the ESI shall be produced after discussion with and written consent of the government about the format for the production of such data.

20. **Production of Native Files (When Applicable Pursuant to These Specifications)**
Production of native files, as called for in these specifications, shall have extracted metadata/database fields
provided in a Concordance® load file format as defined in the field specifications for "Other ESI" as outlined in
section 3.

ESI shall be produced in a manner which is functionally usable by the government. The following are examples:

   a. AutoCAD data, e.g., DWG and DXF files, shall be processed/converted and produced as single-page JPG image files and accompanied by a Concordance® Image formatted load file as described above. The native files shall be placed in a separate folder on the production media and linked by a hyperlink within the text load file.
   b. GIS data shall be produced in its native format and be accompanied by a viewer such that the mapping or other data can be reviewed in a manner that does not detract from its ability to be reasonably understood.
   c. Audio and video recordings shall be produced in native format and be accompanied by a viewer if such recordings do not play in a generic application (e.g., Windows Media Player).

21. **Bates Number Convention**
All images should be assigned Bates numbers before production to the government. The numbers should be
endorsed on the actual images. Native files should be assigned a single Bates number for the entire file. The
Bates number shall not exceed 30 characters in length and shall include leading zeros in the numeric portion. The
Bates number shall be a unique number given to each page (when assigned to an image) or to each document
(when assigned to a native file). If the government agrees to a rolling production, the numbering convention shall
remain consistent throughout the entire production. There shall be no spaces between the prefix and numeric
value. If suffixes are required, please use "dot notation." Below is a sample of dot notation:

|  |  |
|---|---|
| PREFIX0000001 | PREFIX0000003 |
| PREFIX0000001.001 | PREFIX0000003.001 |
| PREFIX0000001.002 | PREFIX0000003.002 |

22. **Media Formats for Storage and Delivery of Production Data**
Electronic documents and data shall be delivered on any of the following media:
   a. CD-ROMs and/or DVD-R (+/-) formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications; Blu-ray.

       b. External hard drives (USB 3.0 or higher, Firewire or eSATA, formatted to NTFS format specifications) or flash drives.

       c. Storage media used to deliver ESI shall be appropriate to the size of the data in the production.

       d. Media should be labeled with the case name, production date, Bates range, and producing party.

**23.** **Virus Protection and Security for Delivery of Production Data**

Production data shall be free of computer viruses. Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to the government. Password protected or encrypted files or media shall be provided with corresponding passwords and specific decryption instructions. No encryption software shall be used without the written consent of the government.

**24.** **Compliance and Adherence to Generally Accepted Technical Standards**

Production shall be in conformance with standards and practices established by the National Institute of Standards
and Technology ("NIST" at www.nist.gov), U.S. National Archives & Records Administration ("NARA" at
www.archives.gov), American Records Management Association ("ARMA International" at www.arma.org),
American National Standards Institute ("ANSI" at www.ansi.org), International Organization for Standardization
("ISO" at www.iso.org), and/or other U.S. Government or professional organizations.

**25.** **Read Me Text File**

All deliverables shall include a "read me" text file at the root directory containing: total number of records, total
number of images/pages or files, mapping of fields to plainly identify field names, types, lengths, and formats.
The file shall also indicate the field name to which images will be linked for viewing, date and time format, and
confirmation that the number of files in load files matches the number of files produced.

**26.** **Exception Report**

An exception report, in .csv format, shall be included, documenting any production anomalies utilizing the electronic Bates number (DOCID or control numbering) assigned during the collection, processing, and production phases.

**27.** **Transmittal Letter to Accompany Deliverables**

All deliverables should be accompanied by a transmittal letter including the production date, case name and number, producing party name, and Bates number range produced.

## Attachment 1

Michael Patrick, Date of Birth: 08/09/1963

Raymond Drago, Date of Birth: 04/22/1943

Amy Edwards, Date of Birth: 07/31/1973

John Phillips, Date of Birth: 11/21/1952

Donna Nicklow, Date of Birth: 06/24/1932

Rutha Thompson, Date of Birth: 09/11/1970